FILED
HARRISBURG, PA

JUN 2 0 2012

MARY E. D'ANDREA, CLERK
Per_____
Deputy Clerk

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA,

           **Plaintiff,**

    v.

GEISINGER HEALTH
SYSTEM FOUNDATION,
BLOOMSBURG HEALTH
SYSTEM and BLOOMSBURG
HOSPITAL,

           **Defendants.**

**CIVIL ACTION NO.**

4:12-cv-01081

## FINAL ORDER

### I. Introduction

Plaintiff, the Commonwealth of Pennsylvania, filed its Complaint on June 7, 2012 under Section 7 of the Clayton Act, 15 U.S.C. §18, and under the common law of the Commonwealth of Pennsylvania alleging that the proposed acquisition of Bloomsburg Hospital and certain other entities of the Bloomsburg Health System ("Acquired Parties") by Defendant Geisinger Health System Foundation will substantially lessen competition in one or more relevant health care services markets. Defendants contest the allegations of the Complaint and wish to assure the Commonwealth and the communities they serve that such acquisition, if permitted to proceed, will occur in accordance with their respective missions and a commitment to the provision of high quality, affordable health care services to the

community.

Plaintiff and Defendants, by their respective attorneys, have consented to the entry of this Final Order without trial or adjudication of any issue of fact or law, and without this Final Order constituting any evidence against, or any admission by, any party regarding any such issue of fact or law. Additionally, Defendants have asserted that the Acquired Parties will have insufficient cash by at least October 2012, to meet their obligations and will no longer be able to continue operations. Given the Acquired Parties' financial condition and the potential for the loss of 900 jobs, Plaintiff has consented to the entry of this Final Order. The essence of this Final Order is to enjoin Defendants, Geisinger Health System Foundation, as parent of Geisinger-Bloomsburg Hospital, and Geisinger-Bloomsburg Hospital itself, from certain practices and institute certain other practices subsequent to the acquisition of the Acquired Parties in order to compensate for the loss of competition alleged in the Complaint.

Therefore, before any testimony is taken, without trial or adjudication of any issue of fact or law, and upon consent of the parties, it is ORDERED, ADJUDGED AND DECREED:

## II. **Jurisdiction**

1.    This Court has jurisdiction over the Defendants and subject matter of this action pursuant to Sections 4 and 16 of the Clayton Act (15 U.S.C. §§15 and

Case 4:12-cv-01081-CCC   Document 2-1   Filed 06/07/12   Page 3 of 29

26). This Court has jurisdiction over the state claims pursuant to 28 U.S.C. §1367(a).

## III. Definitions

As used in this Final Order:

2.    "Acquire" means to purchase the whole or the majority of the assets, stock, equity, capital or other interest of a corporation or other business entity or to receive the right or ability to designate or otherwise control the majority of directors or trustees of a corporation or other business entity.

3.    "Acquired Party" or "Acquired Parties" means Bloomsburg Health System, Bloomsburg Hospital, Bloomsburg Physician Services, Bloomsburg Health Care Center, Columbia/Montour Home Health Services/VNA and Bloomsburg Hospital Medical Professional Liability Self-Insurance Trust.

4.    "BH Payor Contract" means a contract between Bloomsburg Hospital and a Health Plan for the furnishing of inpatient and/or outpatient health care services at Bloomsburg Hospital to Health Plan members and that is currently in effect.   A BH Payor Contract includes contracts for Commercial, Medicare Advantage and Medicaid Managed Care products, unless specified otherwise.

5.    "BH Services" means the core services provided at the time of Closing which are Psychiatry, Obstetrics, General Surgery, General Medical Surgical beds, Emergency Department and Intensive Care Unit.

6.    "Bloomsburg Health System" ("BHS") means the non-profit, tax exempt, corporation based in Bloomsburg, Pennsylvania which owns and controls Bloomsburg Hospital, Bloomsburg Physician Services, Bloomsburg Health Care Center, Columbia/Montour Home Health Services/VNA and Bloomsburg Hospital Medical Professional Liability Self-Insurance Trust.

7.    "Bloomsburg Hospital" ("BH") is a non-profit hospital organized under the laws of the Commonwealth of Pennsylvania, with its principal address at 549 East Fair Street, Bloomsburg, PA 17815. BH is licensed for 72 beds. Geisinger-Bloomsburg Hospital refers to BH after Closing.

8.    "Bloomsburg Physician Services" ("BPS") is a multi-specialty physician group practice with approximately 25 primary care and specialty physicians.  BPS is a non-profit, tax exempt, corporation with its principal address at 549 East Fair Street, Bloomsburg, PA 17815. BPS shall refer to this entity pre-merger and which will be merged into GC following Closing.

9.    "Closing" means the satisfaction of all conditions and occurrence of all events necessary to transfer control of the Acquired Parties to Geisinger Health System Foundation.

10.    "Geisinger Clinic" ("GC") is a multi-specialty physician group practice with more than 900 primary care and specialty physicians. GC is a non-profit, tax exempt, corporation with its principal address at 100 North Academy

4

Avenue, Danville, PA 17822 and includes employed physicians who provide healthcare service at various physician offices located in central and northeastern Pennsylvania for primary and specialty care.

11.    "Geisinger Health Plan" ("GHP") is a health plan licensed by the Pennsylvania Insurance Department.  GHP is a non-profit, tax exempt, corporation with its principal address at 100 North Academy Avenue, Danville, PA 17822. GHP provides insurance coverage in 43 counties in Pennsylvania.

12.    "Geisinger Health System Foundation" ("GHSF") means the non-profit, tax-exempt, corporation based in Danville, Pennsylvania, which is the parent corporation of Geisinger Medical Center ("GMC"); GC; GHP; and other Health-Care Providers and related healthcare companies in central and northeastern Pennsylvania.

13.    "Geisinger-Bloomsburg Hospital" ("G-BH") refers to BH after Closing, an entity of which GHSF will be the parent and will appoint the corporate members post-Closing, who will in turn appoint G-BH's Board of Directors.

14.    "Geographic Market" for purposes of this Final Order but without constituting Defendants' agreement that the same is a relevant geographic market for antitrust purposes, means Columbia County.

15.    "Health-Care Provider" means hospitals, laboratories, physicians, physician networks and other health care professionals.

16.    "Health Plan" means any type of organized health-service purchasing or third-party payment program, including, but not limited to, health insurance and managed-care plans, whether offered by government, for-profit or non-profit, third-party payors, Health-Care Providers or any other entity, including Commercial, Medicare Advantage and Medicaid Managed Care Health Plan contracts for inpatient and outpatient hospital services.

17.    "Hospital" means a health care facility, licensed as an acute care hospital, having a duly organized governing body with overall administrative and professional responsibility and an organized professional staff that provides 24-hour inpatient care, that may also provide outpatient services, and that has as a primary function the provision of inpatient services for medical diagnosis, treatment and care of physically injured or sick persons with short-term or episodic health problems or infirmities.

18.    "Most Favored Nations Clause" ("MFN") means any written or unwritten agreement between a provider and a Health Plan that allows the Health Plan to receive the benefit of a better payment rate, term or condition that the provider gives to another Health Plan.

19.    "PPO Rental Network" means a Health Plan that sells or rents its contracted network of providers to other entities including other Health Plans.

## IV. Terms

From and after the Closing, for the period set forth below, GHSF and G-BH shall comply with the following to the extent the same are applicable to each of them:

20. G-BH shall continue to provide the community it serves with quality, affordable health care services in accordance with its mission and as part of a health care system of which GHSF, a non-profit, tax exempt, corporation, is the parent.

21. **Maintaining G-BH as an Acute Care Hospital-** GHSF, as the parent of G-BH, will appoint the corporate members of G-BH post-Closing, who in turn will appoint a new Board of Directors for G-BH. GHSF as parent will take steps to ensure that the new G-BH Board of Directors agrees to operate G-BH as a Hospital providing BH Services for eight (8) years following the Closing, maintaining its separate corporate status, but as an affiliate of GHSF (and not as a campus of another GHSF Hospital). Once the eight (8) year commitment has expired, GHSF and the G-BH Board of Directors, in their sole discretion, will have the option to maintain G-BH as a Hospital or use the campus for other purposes.

22. **Negotiations Between G-BH and Health Plans**

22.1. G-BH will honor all BH Payor Contracts through their existing terms, subject to any necessary consents being given by the respective

Health Plans.   For purposes of this Final Order, automatic renewal or "evergreen" BH Payor Contracts are deemed to be one year contracts terminable upon their contractual notice as of their annual anniversary date.

22.2.  Prior to the expiration of the term of a BH Payor or G-BH Payor Contract, G-BH will enter into good faith negotiations with such Health Plan for a new contract for services provided at G-BH.  In the event of an impasse after sixty (60) days of negotiations, the Health Plan may, at its option, enter into the Third-Party Review Process with G-BH in Paragraph 22.4.

22.3.  Any Health Plan licensed by the Pennsylvania Insurance Department to serve the Pennsylvania Counties in the Geisinger 31-County Service Area and which has at least 5,000 covered lives in one or more of those counties seeking a first time contract with G-BH may enter into good faith negotiations with G-BH for a contract.  In the event of an impasse after sixty (60) days of negotiations, the Health Plan may, at its option, enter into the Third-Party Review Process with G-BH as defined below.   The Geisinger 31-County Service Area refers to the counties listed on Attachment A.

22.4.  Third-Party Review Process is defined as follows:

A.      G-BH and the Antitrust Section of the Attorney General will agree on an independent consultant to review and validate the methodology G-BH proposes to use during each year of this Final Order in negotiations with Health Plans. G-BH agrees to pay the reasonable fees and expenses for the services of such consultant, not to exceed $30,000 the first year, or $10,000 each following year.

B.      G-BH will provide to the independent consultant its methodology for contract negotiations with Health Plans, based on a formula consisting of the operating costs of G-BH, including the capital investments and operating expenses made by GHSF through its affiliates and allocated based on the direct benefit of G-BH and the G-BH Board of Directors, *e.g.* for IT infrastructure, equipment, risk management and otherwise for G-BH to operate as a well-run community hospital; the Medicare and Medicaid shortfall, if any, of G-BH; a reasonable profit margin for similarly sized and well run community hospitals; and efficiencies and cost savings from G-BH becoming a GHSF affiliate. G-BH and the Health Plan will each also provide to the consultant acceptable contract terms and conditions. The consultant will review the methodology, including each of the above components, as well as the proposed contract terms and conditions as negotiated by G-BH and the Health Plan, as against

comparable well run community hospitals and either validate the proposed negotiation ranges and the appropriate contract terms and conditions or suggest revisions. Negotiation ranges may be in different forms, *e.g.* per diem, percent of Medicare, by DRGs, to reflect the predominant form(s) requested by Health Plans, and will include variation based on volume considerations.

C.    Costs or Medicare/Medicaid shortfalls, if any, for other GHSF affiliates shall not be included in the G-BH methodology, except for those operating expenses from services provided by GHSF affiliates directly for the benefit of G-BH as referenced in 22.4.B.

D.    After the initial sixty (60) day period of good faith negotiation between G-BH and a Health Plan described in Paragraphs 22.2 and 22.3 above, G-BH and a Health Plan will negotiate for an additional sixty (60) day period to reach a contract. At the end of this sixty (60) day period, if the Health Plan's proposal is within the negotiated range and has acceptable contract terms and conditions, G-BH must accept such proposal with that Health Plan for a contract for services at G-BH.  Failure by G-BH to accept a proposal offered by a Health Plan within the independent consultant's validated negotiation range and contract terms and conditions at the end of the additional sixty (60) day period is a violation of this Final Order.

E.   The validated negotiation range and contract terms and conditions, as well as any information shared with the Plaintiff or the independent consultant, will not be disclosed to the Health Plan or anyone other than Plaintiff and Defendants.  If the Health Plan's offer of payment is under the validated negotiation range or contract terms and conditions, G-BH is free not to contract with that Health Plan.

23.   **High Acuity Services Post-Closing at G-BH-** To the extent that GHSF invests $10 million or more in the creation or expansion of a service at G-BH, such as an orthopedic specialty hospital within a hospital ("High Acuity Services"), G-BH is permitted to negotiate rates for those services separately with Health Plans, which negotiations are not subject to the Third-Party Review Process set forth above.  Such separate negotiations shall not affect any then-existing contract with the respective Health Plan for other G-BH services.

24.   **Other Conditions On G-BH Health Plan Contracts-**

24.1.  G-BH shall not condition a contract for G-BH services on a Health Plan's agreement not to contract with any other hospital, health system or other provider.

24.2.  G-BH may not prohibit physicians with G-BH privileges who are members of any GC affiliated physician hospital network from holding privileges at any acute care hospital or from participating in any other

physician-hospital networks, Health Plans or integrated delivery systems; provided, however, that this limitation shall not apply to physicians who are employees of GC.

24.3.  G-BH shall not require a Health Plan to have a contract with any other GHSF affiliates as a condition of having a contract for G-BH services.

24.4.  G-BH is not prohibited from terminating for breach a BH Payor Contract or a future contract for G-BH services in accordance with the terms and conditions of the contract.

24.5.  G-BH shall not enter into any agreement with any Health Plan (including GHP) that includes a MFN to the benefit of G-BH or any Health Plan.  G-BH may not renew or extend any agreement without abandoning any term or provision which constitutes an MFN.  G-BH shall inform the Attorney General of the presence of a MFN in any existing agreement, by providing a list of such agreements to the Attorney General not more than sixty (60) days from entry of this Final Order.

24.6.  GHSF agrees that it will ensure that for BPS physicians who accept employment with GC after Closing, GC will not seek to increase Health Plan payments for those physician services they provide on the G-BH campus, by billing those services as hospital-based, hospital-outpatient

12

or provider-based services. GHSF also agrees it will ensure that GC will not transfer diagnostic testing and other ancillaries from those former BPS physicians who accept employment with GC from those physicians' offices to a G-BH in-patient setting that would result in the billing of Health Plans as if those services were delivered in a location other than the those former BPS physicians' offices.

25. **Medicare Advantage Health Plans Use of PPO Rental Network-** G-BH shall not prohibit any PPO Rental Network from entering into an agreement with a Medicare Advantage Health Plan for G-BH services.

26. **BPS-** GC will offer employment to all BPS employed physicians. Any BPS employed physician choosing not to accept employment with GC will be released from his/her existing restrictive covenant and may freely pursue independent practice in the community with continued privileges at G-BH, subject only to continued qualification.

27. **Staff Privileges**

27.1. G-BH shall maintain an open medical staff and continue all categories of staff privileges for all qualified physicians who have, or have had, staff privileges at BH. G-BH shall also permit qualified physicians currently in, or who enter, the Geographic Market to apply for privileges at G-BH.

13

27.2. Employment by GC or participation in GHP shall not be criteria for continuing or granting staff privileges at G-BH.

27.3. G-BH shall not condition staff privileges at G-BH on a physician's agreement not to practice at other hospitals in Columbia County. G-BH shall not grant or deny staff privileges on the basis of the amount of business or patients a physician brings or may bring unless related to quality of care requirements.

27.4. The Plaintiff and Defendants agree that G-BH may revise its medical staff bylaws and rules and regulations after Closing to ensure compliance with Pennsylvania Department of Health and Joint Commission licensure and accreditation requirements respectively including ensuring appropriate quality and experience standards are utilized in the credentialing process.

27.5. Medical staff privileges at G-BH are for G-BH only and do not extend to other GHSF affiliated Hospitals.

27.6. In the event G-BH merges into and becomes part of GMC in the future, medical staff will be granted privileges in accordance with Section 3.6 of the Comprehensive Integration and Merger Agreement and the First Amendment, as attached as Attachment B.

28.   **Operating Room Scheduling-** G-BH shall ensure that physicians and physician practices historically associated with BH have access to operating room time at G-BH on a nondiscriminatory basis, taking into account the physician's or group practice's historic and current level of utilization of BH's operating rooms.

29.   **Referrals and Transfers**

29.1. G-BH shall not refuse to transfer a patient, whether for diagnosis or treatment, to a Hospital other than a GHSF affiliated Hospital or GC Health-Care Provider if such transfer is requested by the patient, the patient's representative when such representative is authorized to make care decisions for a patient, or the patient's physician; provided that the patient is stable and that the transfer is medically appropriate and legally permissible.

29.2.  In the event a patient in need of transfer is covered by a Health Plan with which the proposed destination Hospital does not contract, G-BH shall transfer the patient to a participating facility (provided that the patient is stable and that the transfer is medically appropriate and legally permissible) unless (i) the patient or the patient's representative expresses a contrary preference after having been informed of the financial consequences of such a decision or (ii) otherwise approved by the patient's Health Plan.

29.3. Nothing in this Paragraph shall require G-BH to make any inquiry concerning health insurance coverage in a manner that would violate the federal Emergency Medical Treatment and Active Labor Act ("EMTALA").

30.   **Ancillary Services**- G-BH shall not require any health care purchaser or patient to purchase durable medical equipment, nonemergency transportation or home health care services from a Health-Care Provider affiliated with GHSF.

31.   **Binding on Successors and Assigns**- The terms of this Final Order are binding on G-BH, and GHSF as its parent, and to their successors and assigns, including, but not limited to, any person or entity to whom such entities may be sold, leased or otherwise transferred, during the term of the Final Order.  G-BH, and GHSF as its parent, shall not permit any substantial part of G-BH to be acquired by any other entity unless that entity agrees in writing to be bound by the provisions of this Final Order.

32.   **Complaint Procedure**- Any person, Health-Care Provider, Health Plan or consumer of medical services who wishes to report a possible violation of this Final Order shall send a written description of the alleged violation to the Chief Deputy Attorney General, Antitrust Section, Office of Attorney General, 14th Floor, Strawberry Square, Harrisburg, Pennsylvania 17120. The Office of Attorney General shall transmit the complaint, keeping confidential the name of

the complainant, if necessary, to GHSF and G-BH.  GHSF and G-BH shall respond

in writing to the complainant, and to the Attorney General within thirty (30) days

from the receipt of any complaint.  If the complaint is still unresolved, the Attorney

General will attempt to negotiate a satisfactory resolution.  If GHSF and G-BH

believe a complaint to be frivolous, they may so advise the Attorney General and

their obligations under this paragraph will be satisfied unless they are otherwise

advised by the Attorney General to respond more fully to the complaint.  GHSF

and G-BH will cooperate with the Attorney General to attempt to resolve the

complaint.

33.     **Compliance**- To determine or secure compliance  with this Final

Order or if the Attorney General receives a complaint pursuant to Paragraph 32 of

this Final Order, upon reasonable notice during normal business hours, any duly

authorized representative of the Attorney General shall be permitted:

       A.     access to all non-privileged books, ledgers, accounts,

correspondence, memoranda, other records and documents, in

the possession or under the control of GHSF and G-BH,

relating to any matters contained in this Final Order; and

       B.     to interview officers, managers or employees of GHSF and G-

BH regarding any non-privileged matters contained in this

Final Order.

34.   **Reimbursement of Expenses-** Upon entry of this Final Order, GHSF shall pay a total of $100,000 to reimburse the Attorney General's costs incurred to conduct its investigation, which payment shall be used for future Public Protection Division purposes.  The parties shall determine their proportionate shares of the payment.

35.   **Enforcement**

35.1.  If the Attorney General believes that there has been a violation of this Final Order, GHSF and G-BH shall be promptly notified thereof. The Attorney General shall thereafter give GHSF and G-BH a reasonable opportunity to cure any alleged violation without instituting legal action.  If the alleged violation is not substantially cured by GHSF and G-BH within sixty (60) days of the notification, the Attorney General may thereafter seek to undertake any remedial action deemed appropriate.  This time period shall be extended in circumstances where the sixty (60) day period is not sufficient time to cure the alleged violation.

35.2.  If the Attorney General prevails in any action or proceeding it brings to enforce this Final Order or otherwise arising out of or relating hereto, the Court shall award costs and expenses, including a reasonable sum for attorney's fees.

36.   **Limited Release-** This Final Order releases GHSF and G-BH only for any claims the Attorney General may have in connection with GHSF's acquisition of the Acquired Parties. All remedies, should other violations of the federal and state antitrust laws be found shall be available to the Attorney General and may include the seizure and divestiture of G-BH. Nothing in this Final Order shall prevent the Attorney General from investigating and prosecuting GHSF or G-BH for any other alleged violations of Federal and State antitrust laws. Nothing in this Final Order shall authorize GHSF or G-BH, their employees or subsidiaries, to engage in other conduct that would violate sections 1 or 2 of the Sherman Act. 15 U.S.C. §§ 1 or 2, or the Pennsylvania common law doctrine against monopolies and unfair restraints of trade.

37.   **Legal Exposure-** No provision of this Final Order shall be interpreted or construed to require GHSF or G-BH to take any action, or to prohibit GHSF or G-BH from taking any action, if that requirement or prohibition would expose GHSF or G-BH to liability for negligence (including negligent credentialing or negligence in making referrals) or malpractice. Further, this Final Order or any reports required hereunder shall not be introduced as evidence and cannot be used for any purpose or in any proceeding by a third party.

38.   **Notices-** All notices required by this Final Order shall be sent by certified or registered mail, return receipt requested, postage prepaid or by hand delivery to:

**If to the Attorney General:**

Chief Deputy Attorney General
Antitrust Section
Office of Attorney General
14th Floor,Strawberry Square
Harrisburg, PA 17120

**If to GHSF and G-BH:**

David J. Felicio, Esq.
Chief Legal Officer
Geisinger System Services
100 N. Academy Avenue
Danville, PA 17822-4031

**Copy to:**

Wendelynne J. Newton, Esq.
Buchanan Ingersoll & Rooney PC
One Oxford Centre, 20th Floor
301 Grant Street
Pittsburgh, PA 15219-1410

39.   **Averment of Truth-** GHSF and G-BH aver that, to the best of their knowledge, the information they have provided to the Attorney General in connection with this Final Order is true.

40.    **Termination-** This Final Order shall expire on the eighth (8th) anniversary of its date of entry if it has not terminated prior to that time as provided in Paragraph 41.

41.    **Modification-** If either the Attorney General or GHSF or G-BH believes that modification or termination of this Final Order would be in the public interest, that party shall give notice to the other side, and the parties shall attempt to agree on a modification. If the parties agree on a modification, they shall jointly petition the Court to modify the Final Order. If the parties cannot agree on a modification, the party seeking modification may petition the Court for modification and shall bear the burden of persuasion that the requested modification is in the public interest.

42.    **Retention of Jurisdiction-** Unless this Final Order is terminated early pursuant to Paragraph 41, jurisdiction is retained by the United States District Court for the Middle District of Pennsylvania for eight (8) years to enable any party to apply to this Court for such further orders and directions as may be necessary and appropriate for the interpretation, modification and enforcement of this Final Order.

43.    **No Admission of Liability-** GHSF and G-BH, desiring to resolve the Attorney General's concerns without trial or adjudication of any issue of fact or law, have consented to entry of this Final Order, which is not an admission of

liability by GHSF or G-BH as to any issue of fact or law and may not be offered or received into evidence in any action as an admission of liability, whether arising before or after the transaction referenced herein.

44.   **Condition Precedent**- This Final Order shall become null and void if the Acquired Parties are not acquired by GHSF pursuant to the Comprehensive Integration and Merger Agreement, dated September 15, 2011, between GHSF and the Acquired Parties, as amended ("Agreement") or if the Agreement is terminated, enjoined or otherwise not performed.

45.   **Counterparts**- This Final Order may be executed in counterparts.

### IV. Public Interest Determination

46.   The Court, upon averment of the Commonwealth of Pennsylvania, finds that entry of this Final Order is in the public interest.

Dated this _____ Day of _____, 2012.

| | |
|---|---|
| **COMMONWEALTH OF FOUNDATION PENNSYLVANIA** | **GEISINGER HEALTH SYSTEM FOUNDATION** |

By: _____
    Linda L. Kelly
    Officer
    Attorney General
    (717) 787-3391

By: _____
David J. Felicio, Esq., Chief Legal

Geisinger System Services
100 N. Academy Avenue
Danville, PA 17822-4031

Alexis L. Barbieri
Executive Deputy Attorney General

**BLOOMSBURG HOSPITAL**

**BLOOMSBURG HOSPITAL**
Public Protection Division

By: _____          By: _____
James A. Donahue, III
Chief Deputy Attorney General
Antitrust Section
(717) 787-4530

Tracy W. Wertz                        **BLOOMSBURG HEALTH SYSTEM**
Senior Deputy Attorney General
Antitrust Section

Jennifer A. Thomson                   By: _____
Deputy Attorney General
Antitrust Section
Attorneys for the Commonwealth of Pennsylvania

Office of Attorney General
14th Floor, Strawberry Square
Harrisburg, PA  17120

So Ordered:


_____
Judge U.S.D.J.

Public Protection Division

James A. Donahue, III
Chief Deputy Attorney General          By: _Regis P. Oboror_
Antitrust Section
(717) 787-4530

Tracy W. Wertz                         **BLOOMSBURG HEALTH SYSTEM**
Senior Deputy Attorney General
Antitrust Section

Jennifer A. Thomson                    By: _Regis P. Oboror_
Deputy Attorney General
Antitrust Section
Attorneys for the Commonwealth of Pennsylvania

Office of Attorney General
14th Floor, Strawberry Square
Harrisburg, PA  17120

So Ordered:

_____
Judge U.S.D.J.

23

ATTACHMENT A

31 County Service Area

| |
|---|
| Bradford |
| Carbon |
| Lackawanna |
| Luzerne |
| Monroe |
| Pike |
| Susquehanna |
| Wayne |
| Wyoming |
| Clinton |
| Columbia |
| Lycoming |
| Montour |
| Northumberland |
| Schuylkill |
| Snyder |
| Sullivan |
| Tioga |
| Union |
| Blair |
| Cambria |
| Cameron |
| Centre |
| Clearfield |
| Elk |
| Huntingdon |
| Jefferson |
| Juniata |
| McKean |
| Miffin |
| Potter |

## ATTACHMENT B

Section 3.6 of the Agreement shall be amended and restated as follows:

"Post-Merger Recognition of BH Active Medical Staff and Certain BH Courtesy, Consulting and Affiliate Medical Staff.  Following Phase I, effective on the  date of the legal merger of G-BH into GMC, members of BH's "Active Staff" (as that term is defined in the BH Medical Staff Bylaws) as the Execution Date of this Agreement who continue to maintain BH Active Staff privileges through the legal merger of G-BH into GMC, will be eligible (the "Eligible BH Active Physicians") for full privileges at both the newly created Geisinger-Bloomsburg Hospital, a campus of Geisinger Medical Center[1] ("G-BH-GMC") and the GMC-Danville campus as "BH Affiliate Staff" of GMC, subject to meeting other applicable GMC medical staff bylaw requirements (not including any requirement of employment by GHSF, GMC, the Geisinger Clinic or some other Geisinger entity or Affiliate and the need for board certification) and successfully completing GMC credentialing. Additionally, eligible BH Active Staff who practice in solo practice or as part of a "Wholly Affiliated Physician Practice", wherein all (but not less than all) members of their practice are also BH Active Staff as the Execution Date of this Agreement and continuing through the legal merger of BH into GMC, may hire additional employed physicians who may also seek appointment as BH Affiliate Staff at GMC, so long as all of the following requirements are met: (i) the subsequently hired physician otherwise meets the requirements of GMC's credentialing process and the GMC Medical Staff bylaws; (ii) all other BH Affiliate Staff members of the Wholly Affiliated Physician Practice or solo practice continue to maintain BH Active Staff privileges prior to the merger and Affiliate Staff privileges at GMC following the merger; and (iii)  G-BH-GMC continues to operate as an acute care hospital. Notwithstanding the foregoing, the BH Affiliate Staff category will not be available following the Execution Date of this Agreement, and shall not apply, to any physician who is or may become, after the Execution Date of this Agreement, a member of the GMC Active Staff or an employee of Geisinger Clinic. If an "Active" BH medical staff member

---

[1] Following the legal merger of G-BH into GMC, G-BH will be renamed the Geisinger--Bloomsburg Hospital, a campus of Geisinger Medical Center.

who is granted "BH Affiliate Staff" privileges at G-BH-GMC and GMC, leaves a professional practice relationship at a date post merger of BH into GMC to establish an independent practice, he/she may retain his/her privileges as stated as long as he/she continues to actively admit patients to G-BH-GMC.

Any physician who opens an office and maintains a practice in Columbia County and applies for and is granted "Active" staff privileges at BH/G-BH between September 15, 2011 and September 15, 2014 and who continues to maintain a practice in Columbia County and Active staff privileges at BH/G-BH through the date of the legal merger of G-BH into GMC, will be eligible for full privileges at both the newly created G-BH-GMC campus and the GMC-Danville campus as "BH Affiliate Staff" of GMC, subject to meeting other applicable GMC medical staff bylaw requirements (including Board certification but not including any requirement of employment by the Geisinger Clinic or some other Geisinger entity or Affiliate) and successfully completing GMC credentialing.

Additionally, effective on the date of the legal merger of G-BH into GMC, certain members of BH's "Courtesy Staff," "Consulting Staff" and "Affiliate Staff" (as those terms are defined in the BH Medical Staff Bylaws) will be eligible to receive non-admitting, courtesy staff privileges at both the newly created G-BH-GMC and the GMC-Danville campus as "BH Courtesy Staff" of GMC, so long as they meet all of the following requirements: (i) the BH Courtesy, Consulting or Affiliate Staff member is a physician who practices in a group practice with Eligible BH Active Physicians, and (ii) the BH Courtesy, Consulting or Affiliate Staff member is in good standing with privileges as active Courtesy, Consulting or Affiliate Staff at BH as of the Execution Date of this Agreement who continues to maintain BH Courtesy, Consulting or Affiliate Staff privileges through the date of the legal merger of G-BH into GMC (collectively the "Eligible BH Courtesy Physicians"). Those Eligible BH Courtesy, Consulting or Affiliate Physicians will be appointed as BH Courtesy Staff at GMC if they successfully complete the GMC credentialing process and otherwise meet the requirements of the GMC Medical Staff Bylaws (not including any requirement of employment by GHSF, GMC, the Geisinger Clinic or some other Geisinger entity or affiliate and the need for board certification). Additionally, the BH Courtesy Staff Category shall be available to

physicians practicing in a group practice with BH Affiliate Staff physicians following the legal merger of BH into GMC, to the extent such physician(s) are seeking BH Courtesy Staff Privileges solely to replace another group practice physician who previously held BH Courtesy Staff Privileges at GMC (the "Replacement Courtesy Staff"), in order to permit the group practice to maintain up to the same number of BH Courtesy Staff physicians in the group practice as existed on the date of the legal merger of G-BH into GMC. GMC may condition approval of privileges to any proposed BH Courtesy Staff physician on receipt of sufficient documentation or such other evidence as it deems necessary, in its sole discretion, to establish proof of a sufficient relationship between the physician seeking privileges as BH Courtesy Staff and the group practice with BH Affiliate Staff Physicians. Notwithstanding the foregoing, the BH Courtesy Staff category will not be available following the Execution Date of this Agreement, and shall not apply, to any physician who is or has been either a member of the GMC Active Staff or an employee of Geisinger Clinic.

The new "BH Affiliate Staff" and "BH Courtesy Staff" categories will be created through an amendment of GMC's medical staff bylaws, which amendment will require the appropriate affirmative vote of the current GMC medical staff, and the GMC Medical Affairs Committee prior to the legal merger of G-BH into GMC. GMC and BH will work diligently to keep the existing BH medical staff engaged and supportive of the Transaction and the subsequent merger of BH into GMC."

Public Protection Division

James A. Donahue, III
Chief Deputy Attorney General          By: _____
Antitrust Section
(717) 787-4530

Tracy W. Wertz                         **BLOOMSBURG HEALTH SYSTEM**
Senior Deputy Attorney General
Antitrust Section

Jennifer A. Thomson                    By: _____
Deputy Attorney General
Antitrust Section
Attorneys for the Commonwealth of Pennsylvania

Office of Attorney General
14th Floor, Strawberry Square
Harrisburg, PA  17120

So Ordered:

_____ 6/26/12
Judge U.S.D.J.

23